UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                    Case No. 10-20185
                                                Honorable Thomas L. Ludington

v.

HUEY WRIGHT,

                Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE**

Huey Wright is currently serving a 142-month sentence for possessing crack cocaine with the intent to distribute. On May 14, 2012, Wright submitted a letter requesting information as to whether he is "eligib[le] for [a] sentence reduction under the new amendment sentencing guidelines of 3582(c)(2)." Def.'s Mot., ECF No. 49. Although presented in a letter, Wright's request will be construed as a motion for a reduced sentence under 18 U.S.C. § 3582(c). Based on what follows, that motion will be denied.

**I**

The Anti-Drug Abuse Act of 1986 established severe penalties for the possession and distribution of crack cocaine. The disparity between the penalties for distributing crack cocaine and powder cocaine was dramatic: 100-to-1. As the Supreme Court observed, the Act "imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one-hundredth that amount of crack cocaine." *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012).

In 2010, Congress enacted the Fair Sentencing Act (FSA), Pub. L. No. 111–220, 124 Stat. 2372, which narrowed the disparity between sentences for crack cocaine offenders and

powder cocaine offenders.  Instead of 100-to-1, it now stands at 18-to-1.  In other words, the FSA imposes upon an offender who dealt in powder cocaine the same sentence it imposes upon an offender who dealt in one-eighteenth that amount of crack cocaine.  The FSA took effect on August 3, 2010.

Among other things, the FSA reduced the statutory minimum sentences for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums—raising the amount from 5 grams to 28 grams for the 5-year minimum sentence, and from 50 grams to 280 grams for the 10-year minimum sentence.  *See* FSA § (2)(a).  The FSA also directed the Sentencing Commission to conform the sentencing guidelines to the new statutory minimums "as soon as practicable, and in any event not later than 90 days" after the FSA's enactment.  *Id*. § (8)(1).  The Sentencing Commission then promulgated amendments to the guidelines, reducing the recommended sentencing ranges to levels consistent with the FSA, to be applied retroactively.  *See* U.S. Sentencing Guidelines Manual App. C Amends. 750, 759 (2011).

The Sixth Circuit originally concluded that the FSA's new mandatory minimums did not affect the penalties associated with crimes committed before the statute's effective date.  *See United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).  But with *Dorsey*, the Supreme Court established that "Congress intended the [FSA's] new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."  132 S. Ct. at 2335.  Accordingly, the FSA's amended mandatory minimums only affect defendants sentenced after August 3, 2010.

But the new advisory guidelines, promulgated by the Sentencing Commission pursuant to the FSA, are different.  As the Sentencing Commission established in Amendment 759, the altered guidelines "may be considered for retroactive application."  U.S. Sentencing Guidelines

Manual App. C Amend. 759 (2011).  Accordingly, the new guidelines may apply to alter a sentence imposed before August 3, 2010.

Title 18 U.S.C. § 3582 provides the mechanism for defendants, the government, and even the Court to move for reduced sentences based on the newly-promulgated guidelines.  Indeed, § 3582(c)(2) establishes that a court may modify a term of imprisonment that has been imposed "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ."  Thus, upon a motion by either party, or even sua sponte, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

Accordingly, "when the sentencing judge relied on the sentencing guidelines and those guidelines are later made more lenient," a final sentence may be modified.  *United States v. Hameed*, 614 F.3d 259, 262 (6th Cir. 2010).  In such a situation, courts are to engage in a two-part inquiry to determine eligibility for a reduction: (1) whether the defendant's sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission"; and (2) whether a reduction in the defendant's sentence would be "consistent with applicable policy statements issued by the Sentencing Commission."   § 3582(c)(2); *see also United States v. McClain*, 691 F.3d 774, 778–79 (6th Cir. 2012).

## II

On June 2, 2011, Wright pleaded guilty to possessing 50 grams or more of cocaine base with the intent to distribute.  Although Wright's original Rule 11 Plea Agreement indicated he would plead guilty to count twelve of the indictment, the Agreement was twice modified, and

Wright eventually pled pursuant to a Second Amended Rule 11 Plea Agreement—which established that Wright pleaded guilty to count eleven of the first superseding indictment.  Aside from that change, Wright still pled to "possession with the intent to distribute 50 grams or more of cocaine base, in the form of crack cocaine."  Second Am. Rule 11 Agreement 1, ECF No. 47.  The Second Amended Rule 11 Agreement was filed on the docket the same day that Wright was sentenced.

Wright was held responsible for 254.25 grams of cocaine base, which set his base offense level as 30 under the pre-FSA guidelines.  A presentence report noted that Wright had a previous felony-drug conviction and a previous violent-felony conviction—making him a career offender under U.S. Sentencing Guidelines Manual § 4B1.1—and thus Wright's offense level was enhanced from 30 to 37.  It was then reduced by three points, to 34, based on Wright's acceptance of responsibility.  When an offense level of 34 was combined with Wright's criminal history, calculated as category VI (also based on his career offender status), his resulting guidelines range of imprisonment was a term of 262 months to 327 months.  When the Court sentenced Wright on September 15, 2011, however, it departed downward—for reasons unrelated to the FSA—and imposed a sentence of 142 months rather than an in-guidelines sentence of at least 262 months.

As noted above, in 2010 Congress enacted the FSA, which substantially reduced the mandatory minimums associated with crack cocaine offenders like Wright.  Subsequently, the Sentencing Commission amended the sentencing guidelines applicable to crack cocaine offenders.  On May 14, 2012, Wright submitted a letter requesting his eligibility for a sentence reduction based on the newly-promulgated advisory guidelines pursuant to § 3582(c)(2).

But § 3582(c)(2) only allows for a sentence reduction when the sentence imposed was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Wright's sentence was not based on a guidelines range that later changed, but rather a departure from the career-offender guidelines range. Under identical circumstances in *United States v. Moore*, 541 F.3d 1323 (11th Cir. 2008), the Eleventh Circuit determined that the defendant's subsequent sentence was not "based on" a guidelines range that was altered by the Sentencing Commission, and thus § 3582(c)(2) was inapplicable. There, as here, the defendant was assigned "a total offense level of 34 and a criminal history category of VI following the application of the career offender guideline. These assignments yielded a guideline range of 262 to 327 months' imprisonment." *Id*. at 1330. The district court in *Moore* also departed downward and "imposed a sentence of 132 months' imprisonment." *Id*. The Eleventh Circuit determined that while guideline amendments would "reduce the base offense level" applicable to Moore, "it would not affect [his] guideline range[] because [he] was sentenced as [a] career offender[] under § 4B1.1." *Id*.

The same conclusion governs here. Wright was sentenced based on the application of advisory guidelines for career offenders. As with *Moore*, his sentence thus was not "based on" a guidelines range altered by the Sentencing Commission, and § 3582(c)(2) provides no relief.

### III

Accordingly, it is **ORDERED** that Wright's construed motion for retroactive application of the FSA, ECF No. 49, is **DENIED**.

Dated: April 3, 2014                                    s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Huey Wright #42498039, BECKLEY Federal Correctional Institution, P.O. Box 350, Beaver, WV 25813 by first class U.S. mail on April 3, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS