UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                            Case No. 10-CR-20185-01
                                              Honorable Thomas L. Ludington

HUEY WRIGHT, II,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE

On September 15, 2011, Defendant Huey Wright II pled guilty to one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a). ECF No. 47. He was sentenced to 142 months imprisonment. ECF No. 48. He is currently housed at Federal Prison Camp, Yankton ("FPC Yankton"), a minimum-security BOP facility in Yankton, South Dakota.

On August 24, 2020, Defendant filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic and his health condition. ECF No. 65. Response and reply briefs have been filed. ECF Nos. 66, 67. For the reasons stated below, Defendant's motion and request for counsel will be denied.

**I.**

Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…

> after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A).[1] The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

### A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). On July 24, 2020, Defendant sent a written request for compassionate release to officials at FPC Yankton. ECF No.

---

[1] To the extent Defendant seeks a transfer to home confinement, "[d]esignation of an inmate's place of confinement, including placement in home confinement [under section 12003(b)(2) of the CARES Act], rests within the absolute discretion of the BOP." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020) (internal quotation marks omitted). As a result, "the district court has no authority to grant relief under section 12003(b)(2)." *Id.*

65 at PageID.344–46. The BOP denied his request on July 30, 2020. ECF No. 65 at PageID.347. Defendant has therefore exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of 18 U.S.C. § 3553(a). They are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying conviction is for one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). ECF No. 48. While drug-related offenses are serious, Defendant has served the large majority of his 142-month sentence. Indeed, his projected release date is May 17, 2021, and the BOP is allegedly moving him to transitional

housing next month, November 2020.[2] ECF No. 65 at PageID.324. Additionally, according to his Presentence Investigation Report, Defendant's only prior drug offense derives from a conviction for delivering cocaine in 1998, when Defendant was 18.

Furthermore, Defendant has made the most of his time at FPC Yankton, completing over a dozen educational courses and maintaining work assignments. *See* ECF No. 65 at PageID.342. He has had no recent institutional disciplinary incidents. *Id.* He also started RDAP (Residential Drug Abuse Program) in February 2020 to address his history of drug addiction. *Id.* Accordingly, in light of Defendant's limited criminal history, significant time-served, correctional programming and drug treatment, the 18 U.S.C. § 3553(a) factors support early release.

## C.

The next inquiries to be resolved are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United States Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

---

[2] The Government has not responded to his claim that he will be moved to transitional housing soon but has conceded the projected release date. ECF No. 66 at PageID.351.

U.S.S.G. § 1B1.13. While Defendant would likely not pose a danger to the safety of others or the community, he has failed to show an extraordinary and compelling reason for release.

**1.**

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--
>
>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>   (ii) The defendant is--
>
>     (I) suffering from a serious physical or medical condition,
>
>     (II) suffering from a serious functional or cognitive impairment, or
>
>     (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
>   (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)        The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant is a 40-year-old male who suffers from chronic kidney disease and has a 20-year history of smoking. ECF No. 65 at PageID.320–22. Defendant argues that these conditions, along with being African American, put him at an elevated risk of developing a severe COVID-19 infection.[3] *Id.* The Government agrees. ECF No. 66 at PageID.350. However, as explained below, Defendant has failed to show an extraordinary and compelling reason for release.

Subsection (A) requires that Defendant suffer from either a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care within the custodial environment. U.S.S.G. § 1B1.13. Defendant's kidney disease and history of smoking, even in combination with the risk of COVID-19, fail to satisfy subsection (A). *See United States v. Gordon*, No. 92-81127, 2020 WL 4788023, at *5 (E.D. Mich. Aug. 18, 2020) (denying compassionate release for defendant with monitored chronic kidney disease and noting "renal disease is a risk factor that supports, but does not establish, [an] extraordinary and compelling reason[]"). While Defendant was diagnosed with Stage I Kidney Disease in 2012, ECF No. 65 at PageID.343, his condition does not seem to have substantially deteriorated.[4] *C.f. United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255, at *19 (W.D. Pa. Aug. 20, 2020) (granting

---

[3] Defendant's opening brief includes three declarations from Doctors Chris Beyrer, Jonathan Louis Golob, and Jaimie Meyer. ECF No. 65 at PageID.327–41. Each declaration was executed in March 2020 and provides background on COVID-19 and the risks associated with the custodial environment. *Id.* None of the declarations are directed at Defendant specifically and, presumably, the declarants have no personal knowledge of Defendant's circumstances.
[4] According to the Government, Defendant's medical records show that his kidney disease has progressed to "stage 2, (mild)." ECF No. 66 at PageID.351. However, the Government has not filed the medical record in question.

- 6 -

compassionate release for defendant with "near-end-stage kidney disease," type 2 diabetes, high blood pressure, and high cholesterol); *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *6 (E.D. Mich. May 5, 2020) (granting compassionate release to 71-year-old defendant with "chronic kidney disease, hypertension, pulmonary hypertension, and sleep apnea").

In fact, since his 2012 diagnosis, Defendant has been classified under "Care Level 1," which is reserved for inmates that are "generally healthy" and whose medical needs "can be easily managed by clinician evaluations every 6–12 months." ECF No. 65 at PageID.342 (designating Defendant "CARE1" since March 2012); Fed. Bureau of Prisons, Care Level Classification for Medical and Mental Health Conditions or Disabilities 2 (2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf [https://perma.cc/CX4B-FB65]. Though Defendant's kidney disease and history of smoking put him at an elevated risk of developing serious COVID-19 symptoms,[5] "a generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

Defendant also argues that this Court should look beyond subsection (A), as some courts have done, and find an extraordinary and compelling reason for release under the so-called "catch-all" provision of subsection (D). ECF No. 65 at PageID.322–24. Even if the Court could do so, Defendant has not shown such an extraordinary and compelling reason. For instance, without minimizing Defendant's concerns about the custodial environment, FPC Yankton reporting five

---

[5] The CDC makes clear that smoking and kidney disease of any sort are risk factors for COVID-19. People with Certain Medical Conditions, CDC (Oct. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#chronic-kidney-disease [https://perma.cc/UZ8Q-ABJE]. However, Defendant seems to conflate a history of smoking with "lung disease." *See* ECF No. 65 at PageID.322. Furthermore, the CDC does not list African Americans as a high-risk group. *See* CDC, *supra*.

active COVID-19 infections, all among staff. COVID-19, Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/HR43-KKAA] (last visited Oct. 29, 2020). Moreover, Defendant has not alleged that the medical care at FPC Yankton is inadequate and he appears to be receiving the care required to manage his kidney disease.[6] *See* ECF No. 65 at PageID.342. More principally, Defendant has not shown that he would be safer once released into the community at large. "[T]he pandemic is a global phenomenon and some risk is inherent no matter where [Defendant] resides, either at home or in prison." *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020).

The other subsections provided in the policy statement commentary are clearly inapplicable. Defendant's situation does not qualify as "extraordinary and compelling" under subsection (B) of the policy statement commentary because he is 40 years old. Additionally, he does not qualify under subsection (C) because he has not alleged the death or incapacitation of a spouse or caregiver of his minor children. Accordingly, Defendant has not shown an extraordinary or compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

---

[6] In his reply brief, Defendant alleges that a black mold infestation at FPC Yankton could further weaken his immune system, making COVID-19 a "death sentence." ECF No. 67 at PageID.360. There is no indication that the black mold is affecting Defendant specifically and, as Defendant mentions, the BOP is chemically treating the mold *Id.*

> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). The Government argues that, based upon these factors, Defendant's early release would pose a danger to others or the community. The Government's case is uncompelling. To begin, Defendant's criminal history is relatively limited. Other than the underlying offense, Defendant's most serious convictions are for delivering cocaine in 1998 and felonious assault in 2000. After 2000, Defendant had just two convictions, both for resisting arrest (2005, 2008) and cumulatively resulting in nine months in jail. Defendant's only violent offense was the felonious assault in 2000.

The Government is correct that "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). Even so, the Government fails to show that Defendant's early release would pose an appreciable risk of criminal activity. Specifically, the Government fails to address Defendant's substantial correctional programming or RDAP treatment—factors which, combined with his limited criminal history and significant time-served, strongly suggest that his early release would not endanger the community. *See United States v. Lee*, No. CR DKC 12-0493, 2020 WL 4053352, at *4 (D. Md.

July 20, 2020) (finding no danger to community where defendant had positive institutional record and "drug addiction that fueled some of [defendant's] criminal conduct ha[d] been treated").

However, as discussed in Section I.C.1., *supra*, the lack of an extraordinary or compelling reason for release means that Defendant is ineligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A), even if he shows that his early release would not threaten the safety of the community. Accordingly, his motion for compassionate release will be denied.

## II.

Defendant alternatively requests appointment of counsel if this Court denies his motion for compassionate release. ECF No. 65 at PageID.326. The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967). The Supreme Court has held that prisoners' post-conviction right to counsel extends only to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The decision to appoint counsel is within the discretion of the court, and the appointment of counsel is only required where the interests of justice or due process so require. *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). Appointment of counsel is therefore required only if, given the difficulty of the case and petitioner's ability, the petitioner could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have a reasonable chance of winning with the assistance of counsel. *See Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002).

Defendant is not entitled to counsel under the Sixth Amendment. Furthermore, seeking compassionate release does not involve complex facts or legal doctrines such that Defendant could not effectively represent himself. Here, in fact, Defendant filed well-documented opening and

reply briefs. Defendant has not elaborated further on his request for counsel. Accordingly, Defendant's request for appointment of counsel will be denied.

### III.

Accordingly, it is **ORDERED** that Defendant Huey Wright II's Emergency Request for Compassionate Release, ECF No. 65, is **DENIED WITH PREJUDICE.**

It is further **ORDERED** that Defendant's request for appointment of counsel is **DENIED**.

Dated: October 30, 2020      s/Thomas L. Ludington
                             THOMAS L. LUDINGTON
                             United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Huey Wright, II** #42498-039, YANKTON FEDERAL PRISON CAMP, Inmate Mail/Parcels, P.O. BOX 700, YANKTON, SD 57078 by first class U.S. mail on October 30, 2020.

           s/Kelly Winslow
           KELLY WINSLOW, Case Manager

---